Tiwanda Lovelace
1790 S West Temple B205
Salt Lake City, UT 84115
(702) 860-0116
tgl2022100@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH - CENTRAL DIVISION

Tiwanda Lovelace

    Plaintiff,

v.

THE STATE OF NEVADA ex rel
NEVADA DEPT. OF EMPLOYMENT
TRAINING AND REHABILITATION
(DETR) CHRISTOPHER SEWELL, in his
official capacity only as Nevada's Director
of DETR, and KRISTINE K. NELSON as
new Employment Security Division
Administrator in her official capacity only as
the Administrator for the Employment
Security Division (ESD); and DOES 1-100
500 East Third St.
Carson City, NV 89713

    Defendants,

FILED US District Court-UT
AUG 18 '23 AM 11:47

**COMPLAINT FOR VIOLATION OF
CIVIL RIGHTS and DUE PROCESS** (20
Pages); **EXHIBIT LIST** (4 Pages)
**EXHIBITS 1-16** (62 Pages); **INDEX** (1
Pages)

Case: Num
- Case: 2:23-cv-00535
- Assigned To : Pead, Dustin B.
- Assign. Date : 8/18/2023
- Description: Lovelace v. State of Nevada et al

Jury Trial Requested = <u>YES</u>

---

### I. PARTIES

1. Plaintiff, Tiwanda Lovelace is an African American female and U.S. citizen who currently resides in Salt Lake City, UT. Plaintiff was hired by Ameriprise as a Customer Service Professional on March 9, 2020. For the duration of this employment, Plaintiff had no disciplinary actions or previous attendance concerns. Plaintiff worked from home after the

1

initial week and continued working from home from March 9, 2020, to March 30, 2022, during the COVID-19 Pandemic.

2. Plaintiff was also previously employed by the Defendants as an Unemployment Claims Rep I (Intermittent) approximately from December 2010 to September 2011.

3. Plaintiff is also the daughter of a man convicted of killing a police officer, experiencing abuses of power, under color of law.

4. Defendants, STATE OF NEVADA Dept. Of Employment Training and Rehabilitation (DETR) the department of the state of Nevada who is responsible for administration and payment of unemployment benefits to all qualified individuals who apply. Defendants, DETR is certified by the US Secretary of Labor pursuant to Section 303(a)(1) of the federal Social Security Act, 42 U.S.C. 503(a)(1)(3) to administer and pay all federally financed unemployment benefits to qualified individuals. In addition, a substantial part of the cost of DETR's administration of both State and Federal unemployment compensation is paid in whole or in part by the United States.

5. Individual Defendant, CHRISTOPHER SEWELL, is the Director of the Employment, Training and Rehabilitation, and is sued only in his official capacity only as Nevada's Director of DETR, for non-monetary relief. Together with the other individual Defendants' herein, Individual Defendant is responsible for executing the functions of DETR as it pertains

to the timely processing and payment 'when due' of Unemployment Compensation to all eligible individuals.

6. Individual Defendant, KRISTINE K. NELSON as new Employment Security Division Administrator, and is being sued only in her official capacity, only as the Administrator for the Employment Security Division (ESD). Together with the other individual Defendants herein, Individual Defendant is responsible for executing the functions of DETR as it pertains to the timely processing and payment 'when due' of Unemployment Compensation to all eligible individuals.

7. Defendants' unemployment insurance claims process is clearly stated on their website with regards to initiating and appealing.

8. Plaintiff reserves the right to seek to amend this complaint to name another individual(s) in his or her official capacity, should another person assume the position any individual Defendant now occupies.

9. The identity of the DOES 1-100 is unknown at this time and this complaint will be amended at such a time when identities are known to Plaintiff's.

## II.    JURISDICTION AND VENUE

10. This action is being brought under 42 USC 1983 and Title VI of the Civil Rights Act of 1964 and Section 603. The Plaintiff alleges discrimination based on race and age. Equitable and other relief are also sought under 42 U.S.C. 2000d et seq. ("Title VI") Title VI prohibits

discrimination on the basis of race, color, or national origin in any program or activity that receives Federal funds or other Federal financial assistance.

11. Jurisdiction is also based on 28 U.S.C. 1331, 1343 and 42 U.S.C. 1981.

12. This action has been filed due to time constraints associated with filing requirements and due to lack of assistance and due to EEOC Website issues preventing scheduling an interview for my submission by not providing an accessible link and their own guidelines which clearly states the inability to provide opportunity for scheduling via telephone assistance. Plaintiff was provided no other recourse but to seek assistance from the courts. See Exhibit 11, 13.

13. The Plaintiff files under Title 18, USC, Section 245(1)(b), (e); 2(b), - Federally protected activities. The statute prohibits willful injury, intimidation, or interference, or attempt to do so, by force of any persons because of their activity as: 'a participant in any benefit, service, privilege, program, facility or activity provided or administered by the United States.;' and (e) 'a participant in any program or activity receiving Federal financial assistance.; ' and 'a participant in any benefit, service, privilege, program, facility or activity provided or administered by a state or local government.'

14. The Plaintiff alleges violation of due process with regards to the ability to exercise rights to benefits that are afforded to other non-African American claimants and timely access to the ability to apply and appeal denial of these benefits.

### III.     STATEMENT OF CLAIM

15. Plaintiff was hired by Ameriprise as a Customer Service Professional II on March 9, 2020.

16. Plaintiff worked from home after the initial week and continued working from home for the first year and a half during the COVID-19 Pandemic, until she contracted COVID-19 and took medical leave.

17. Prior to the referenced COVID-19 medical leave, on 07/22/2022 Plaintiff filed a complaint with the Ethics Committee against U.S. Rep. Catherine Cortez-Masto after her office backtracked after advising Plaintiff that their office would assist with Plaintiff's report of abuse of power under color of law. Plaintiff contacted Cortez-Masto in the hopes she would uphold the sworn oath to expose corruption. Shortly afterward, Plaintiff faced a hostile work condition that was reported to my employer. See Exhibit 11, 13 and 14.

18. Plaintiff received a letter from the ethics dated November 18, 2022, indicating a response as if they did not receive all of the documentation submitted. See Exhibit 13 and 14.

19. Plaintiff had no history of attendance issues and no history of disciplinary actions while employed. Plaintiff had filed complaints with regards to bullying and forwarded email confirmation and documentation in support of allegations of bullying that were repeatedly ignored by her employer manager and human resource reps.

20. Plaintiff was fired from Ameriprise Financial as a 'voluntary quit' on March 30, 2022.

21. Plaintiff filed an unemployment insurance claim on April 1, 2022. See Exhibit 1.

5

22. Plaintiff received the Defendant's Notice of Monetary Determination dated April 7, 2022, indicating the weekly amount for unemployment is $457 for a total of 26 weeks with the maximum payable amount of $11,882.00. See Exhibit 2.

23. The difference in treatment includes the Adjudicator's automatic decision to ignore administrative procedures, setting aside the fact-finding process and disregard applicable statutes that would provide plaintiff access to benefits, exposing Plaintiff to unfair and discriminatory treatment. See Exhibit 1, 7-9.

24. After months of contacting DETR for the initial hearing date, Plaintiff was advised by DETR Rep. that Dept of Employment, Training and rehabilitation works for the employer, not the claimants. The DETR phone rep added that I should contact my local US Representative.

25. Plaintiff filed a Complaint with the Nevada Governor, Sisolak per Defendant's call center reps. advice. Plaintiff received a response on August 2, 2022. This response indicated that they forwarded the concern to the Defendants, DETR. See Exhibit 12.

26. Approximately (6) six months after initial claim filing, plaintiff received a phone call from DETR Adjudicator. Plaintiff reiterated COVID-19 safety concerns and bullying encountered upon return from COVID-19 Medical Leave, but the adjudicator simply dismissed, while quoted what (Ameriprise) the employer told her. This call took place approximately on September 16, 2022, without receiving written confirmation of the initial hearing in the mail. The Defendants were provided the Plaintiff's new addresses.

27. This adjudicator had a playful tone and was so callous that the call was disconnected mid-conversation. The adjudicator also stated that she would be calling me back, but the Plaintiff was not given another opportunity to speak with this adjudicator.

28. The Plaintiff submitted written correspondence dated September 18, 2022, addressed to the Defendants providing further clarification and follow-up. The plaintiff was forced to defend what the employer said, while claimants supporting documentation was ignored and set aside.

29. Plaintiff provided clear documentation indicating that she did not voluntarily quit this position, but the Adjudicator ignored and set aside supporting documentation.

30. The Adjudicator's decision stated, "The employer reports you voluntarily quit for failing to return to work as instructed. You report that you were being harassed and/or discriminated against, you filed complaints. The employer reports that you left work unauthorized on 03/02/2022, you did not return to work nor file for personal leave of absence. You were instructed to return to work, your complaint was being taken seriously and being looked into. You called off 03/30/2022 rather than return to work as required to maintain employment. As you did not file for personal leave of absence nor return to work as required by your employer while your complaint was being looked into, good cause has not been shown."

31. This Determination of Denial response is clearly one-sided, ignoring Claimants initial fact-finding where COVID-19 Pandemic was referenced as contributing factor to separation. This

action deprived Plaintiff any opportunity for recourse; especially when the Adjudicators are still holding the Appeal. See Exhibit 1, 5.

32. The employer told the State of Nevada's DETR, Unemployment adjudicator, that they attempted to resolve the issues, when they did not.

33. Plaintiff provided documentation in support of no attempt to address and demonstrated a hostile work environment, but DETR Adjudicator completely ignored everything presented.

34. DETR Adjudicator completely set aside the initial fact-finding submitted in the Initial Fact-Finding submitted online on April 1, 2023, which indicated that COVID-19 medical leave contributed to employment separation. See Exhibit 1 and 4.

35. DETR Adjudicator completely set aside the initial fact-finding submitted on April 1, 2022, which indicated a hostile work environment. See Exhibit 1 and 4.

36. After being wrongfully denied and provided with no recourse, Plaintiff filed a Complaint with the Nevada's Governor Sisolak's office on the advice DETR's Rep. See Exhibit __.

37. Plaintiff alleges that the Defendant's Adjudicators decision to delay the claims process by not forwarding the Appeal sent certified US mail on October 19, 2022, to the Appeals Department for over (11) eleven months is clearly inexplicable. See Exhibit 5.

38. The plaintiff asserts that it is illogical to even consider that it would take almost a year for the DETR's Adjudicators to forward the Appeal to the Appeals Team. It simply does not take 910-11) months for the Adjudicators to forward the Appeal to the DETR Appeals Team.

39. The State of Nevada's DETR, Unemployment adjudicators completely ignored and disregarded the fact that my separation involved me being bullied after returning from a COVID medical Leave. See Exhibit 3 and 4.

40. The State of Nevada's DETR, Unemployment adjudicators completely ignored and disregarded Plaintiff's copy of email from employer dated February 28, 2022, which clearly indicated employee reported hostile work environment, but adjudicator stated in decision that the company was addressing the complaints when employer waited over a month to even acknowledge. See Exhibit 14, 15.

41. The State of Nevada's DETR, Unemployment adjudicators completely ignored and disregarded the Plaintiff's copy of email from employer dated February 28, 2022, which clearly indicated employee reported hostile work environment upon return from COVID-19 Medical Leave. See Exhibit 14-16.

42. The State of Nevada's DETR, Unemployment adjudicators completely ignored and disregarded the Plaintiff's copy of letter dated February 25, 2022, confirming Employee was on a COVID medical Leave. See Exhibit 14-16.

43. A copy of three pages of screenshots from the Nevada's unemployment website claimants account profile confirming that my appeal is not even noted as being received for the entire (11) eleven month (as the website says pending Appeals should be listed). See Exhibit 6.

9

44. The State of Nevada's DETR, adjudicators completely ignored and disregarded the Plaintiff's copy of letter dated February 25, 2022, confirming Employee was on a COVID medical Leave.

45. The State of Nevada's DETR, Unemployment adjudicators completely ignored and disregarded the employers Employee Relations Manager's ONLY response acknowledging referenced concerns after 30-days of repeat notices was on Tue, Mar 29, 2022, at 2:23 PM:

    *"You have asked for options, which are as follows:*
    * *Return to the office a minimum of 3 days a week, consistent with company policy, starting March 30, 2022.*
    * *If you do not return to the office for work on March 30, 2022, you will be considered to have voluntarily resigned from your position!"*

    In their own words and the email response, they said the only option that they were present is for me to be back to work on a certain date or they would fire me as a voluntary quit. This was the day before they had set to fire the Plaintiff as a voluntary quit. It is unreasonable for DETR Adjudicator to defend the employer, while approving other non-African American claimants.

46. That being said, that means that this appeal has been intentionally stalled by the Adjudicators who made the wrong decision to set aside the proper procedure for appeals, thus denying opportunity to exercise her rights to benefits and the appeal process.

**ALTHOUGH PLAINTIFF ASSERTS THAT SHE DID NOT VOLUNTARILY QUIT, DETR'S OWN WEBSITE PROVIDES THE FOLLOWING INFORMATION:**

47. **Per Appeal Process DETR for Good Cause:** Good cause for leaving work can be established if there is a compelling reason to quit, and there are no other reasonable alternatives but to quit. The person may quit for … work-related reasons. An acceptable personal reason may be circumstances that might happen in a person's … place of employment, that would compel any reasonable person to leave, even though he or she may be firmly attached to the employer and would prefer to remain.

48. **Per Exhaust Reasonable Recourse:** A person must first make attempts to keep his or her job. Generally, a person must consult with supervisory personnel regarding the unacceptable work-related conditions and attempt to either resolve them, or make an adjustment with regard to the conditions, whether it involves the work assignments, or other employees. If the employer refuses to resolve the problem, or cannot resolve the problem, or make appropriate adjustments to the work conditions, then a person may have good cause to quit.

49. A person may have good cause to quit if the employer requires the employee to perform an act that is either illegal or unsafe like forcing them to work in a hostile work environment.

50. DETR has recently been in the news indicating that '… *the state determined it paid too much in unemployment benefits during the pandemic, and more than half of the overpayments weren't attributed to fraud. (DETR) agency started sending out notices late last year to more than 150,000 Nevada residents asking for their money back. As of Aug. 10, the agency has recovered $21.5 million in overpayments from a pandemic-related program for self-employed workers and roughly $745.3 million in traditional unemployment insurance, it*

*said.'* This would indicate that DETR was approving claims that should not have been approved, while claimants like the Plaintiff are 'unprotected, ignored and set aside.' – By McKenna Ross Las Vegas Review-Journal August 16, 2023 - 12:53 pm. This article confirms that DETR adjudicators were not making other claimants wait over (6-7) six-to-seven months for their initial hearing.

51. The Defendants are not following proper procedures in relation to the Plaintiff's claims by withholding and deliberately delaying forwarding the Plaintiff's Appeal for over (10) ten months. The Plaintiff's Appeal is not and has never been acknowledged via their website guidelines and is simply maliciously stalled and retained in the department that originally wrongfully denied the unemployment. The Defendants actions and failure to act denies the Plaintiff due process and depriving the opportunity and access to processes allotted to others.

52. The defendants completely ignored everything that the Plaintiff presented and focused *only* on the employer's version of events in relation to statutes that would unfairly deny plaintiff's unemployment insurance claim, preventing the Plaintiff's ability to access benefits afforded to other non-African American females in similar circumstances.

53. By failing to provide a mechanism where the Plaintiff can address wrongful denial and address an inexplicable delay to access to benefits and denial of opportunity to appeal for almost a total of (16+) sixteen months and counting, the Defendant's failure to act and their actions, has violated a federal statute to the great harm of the Plaintiff.

54. By the acts complained of herein, the Defendant's failure to act and their actions, has violated a federal statute to the great harm of the Plaintiff.

55. Plaintiff has a legitimate claim of entitlement to these unemployment benefits. The payment of unemployment compensation benefits creates a property interest protected by due process.

56. Since it is a property right, denial of payment of unemployment compensation by refusing to allow an individual claimant to appeal is a violation of due process. As stated in Board of Regents of State Colleges v. Roth, 408 US 564, 576, 92 S Ct. 2701, 33 L. Ed.2d 548 (1972), "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interest that a person has already acquired in specific benefits."

57. By the acts complained of herein, Defendants have denied Plaintiff's due process of law by 'stalling' and/or 'running out the clock' on any recourse. Therefore, Plaintiff is unable to be a 'party' to any administrative proceedings.

58. The Defendants have an established process and set guidelines, which includes an appeal process, but Plaintiff has been denied an opportunity to participate in this process due to Defendants actions and inaction.

59. Defendants Adjudicator was provided Ameriprise's Corporate Office, dated January 12, 2021, alleging workplace safe and open. Within weeks of returning to the office while COVID variants and myself and other employees were diagnosed with COVID. See Exhibit 9.

## IV. RETALIATION

60. The Defendants waited a total of (6) six months after *initial* claim filing before affording the Plaintiff the opportunity for an initial hearing. Plaintiff is confident that although there was a COVID-19 Pandemic, other non-African American females were not made to wait over (6) six months for their initial hearing.

61. The initial phone hearing was approximately (30) thirty days after the Governor contacted DETR regarding my complaint, but it was over (6-7) six-to-seven months before the Plaintiff was afforded an initial telephone hearing.

62. This phone hearing was one-sided while the adjudicator defended the employer and ignored Plaintiff's submissions and filings confirming COVID contributed to separation from employment.

63. The Plaintiff received a letter dated March 16, 2023, from the State of Nevada DETR, Rehabilitation Division, Bureau of Disability Adjudication 500 E. Third Street – Carson City, NV 89713. Plaintiff has had growing concerns as to whether POA's from auto accidents have been misused and/or abused by prominent, well-connected individuals or group(s). See Exhibit 10.

64. The address has been jumbled with a mix of the correct address, with modifications. DETR has/had the Plaintiff's correct addresses whenever there are updates required. At the time the address was: 1580 S 3940 W F206, Salt Lake City, UT 84123 but the letter had the Plaintiff's

14

address as: 1580 W 3940 A, APT 8206, Salt Lake City, UT 84123. The address reflects that it was deliberately altered and most likely not intended to actually reach the Plaintiff. See Exhibit 10.

65. Plaintiff has never submitted any type of claim with the BUREAU OF DISABILITY. There is no legal standing for any contact between the Rehabilitation Division of the Bureau of Disability Adjudication and the Plaintiff. See Exhibit 10.

66. The Plaintiff does not have Power of Attorney (POA), nor does the Plaintiff represent her sibling whose name is listed in the letter.

67. The Plaintiff has not given permission or Power of Attorney (POA) to anyone, either. This letter indicates the likelihood of malfeasance due to modified address or some form of harassment. The Plaintiff's only claim is an unemployment insurance claim.

68. After wrongfully denying my UI Claim filed over 16+ months ago, DETR has been sitting on my Appeal for over (10) ten months. See Exhibit 5.

69. Instead of written confirmation of receipt of Plaintiff's Appeal, DETR mailed her a letter dated March 20, 2023, and postmarked by USPS from the State of Nevada DETR, Rehabilitation Division, Bureau of Disability Adjudication. The Plaintiff does not have power of attorney for my adult sibling; therefore, it is illegal for them to contact another adult without authorization.

70. Description of the referenced received mail correspondence: The outside of the envelope only indicates that the letter is addressed to Tiwanda Lovelace (as if she has a claim for disability adjudication (when I do not). See Exhibit 10.

71. There is no indication that this correspondence is being sent on behalf of due to no reference to C/O my adult sibling who lives in a completely different state and does not have my address.

72. Plaintiff alleges this letter is indicative of criminal activity within the State of Nevada, targeting the Plaintiff for exercising rights and filing complaints of abuse of power. See Exhibit 10.

73. Each of these issues regarding this letter indicates some possible form of deception; especially, since I do not have any mental or medical disability claims filed with the State of Nevada - DETR, Rehabilitation Division, Bureau of Disability Adjudication, especially when combined with the mailing address has been distorted and modified.

74. The Plaintiff has been harmed and will continue to be harmed by the Defendant's decision to deny, stall the appeal process is clearly an abuse of discretion. In the middle of a pandemic, the DETR Adjudicator elected to deny Plaintiff's initial fact-finding which indicated COVID medical leave contributed to separate from employment, while providing use of denied statutes to approve other claimants who are not African American females.

## V. INJURIES

75. By not applying the same policies and procedures to the plaintiff, this led to months of uncertainty and deprivation of rights to benefits.

76. My unemployment was denied because the adjudicator ignored all information provided by Claimant/Plaintiff. The Plaintiff asserts she did not 'voluntary quit' but the Defendants adjudicator completely disregarded mentioning anything about the allegations of bullying and that it was because I was returning from COVID leave. Other Claimants who were impacted by COVID received their unemployment. This deprived me of property rights to $11,800.00. See Exhibit: 2.

77. The plaintiff's credit score was 720 that has dropped below 500, due to their actions of discrimination and conspiring to deny my unemployment claim and delay any recourse by allowing the time limits to file a claim expire.

78. Plaintiff's vehicle 2021 Nissan Altima was repossessed due to inability to pay because of loss of job and wrongful denial and delay of unemployment benefits. $32,000.00.

79. The plaintiff was unemployed for six to seven months which led to repeated Notices to Vacate and faced an Eviction. Due to wrongful claim denial and delays, the Plaintiff was unable to pay rent. The Plaintiff still owes her previous apartment complex $4,500. See Exhibit: 17.

## VI.    RELIEF

80. **Plaintiff prays for the following relief:**

81. (a) Judgement entered in favor of plaintiff and against the defendants on counts I-V of Plaintiff's Complaint and an award of compensatory and punitive damages listed INJURY more than and no less than the total amount of her Unemployment Claims benefits - $11,800.00.

82. (b) Judgment for injunctive relief to prompt DETR to retract their decision to deny and delay benefits, alleging that Lovelace had 'voluntarily Quit." and any other damages that the court deems fair.

83. (c) Judgment for injunctive relief by Order to prompt DETR to explain and defend all decisions and acts complained of herein, up to and including Retaliation.

## VI. CERTIFICATION AND CLOSING

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained therein is true and correct. 28 U.S.C. '1746; 18 U.S.C. ' 1621.

Executed at  1790 S WEST TEMPLE SALT LAKE City UT 84115  on August 18, 2023.
            (Location)

_____
Signature

## INDEX

| Document Description | Number of Pages |
|---|---|
| **COMPLAINT** | **18 Pages** (without Certificate of Service and Index) |
| **INDEX** | 1 Page |
| **CERTIFICATE OF SERVICE** | 1 Page |
| **EXHIBIT LIST** | 4 Pages |
| **EXHIBITS 1-16** | 62 Pages |
| | |

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing:

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS and DUE PROCESS (20 Pages);
EXHIBIT LIST (4 Pages) EXHIBITS 1-16 (62 Pages); INDEX (1 Pages)**
(Name of pleading)

was mailed/delivered to

**Office of the Attorney General**
100 North Carson Street
Carson City, NV 89701
Telephone: 775-684-1100
Fax: 775-684-1108

**State of Nevada Dept. Employment, Training and Rehabilitation
Christopher Sewell, Director of DETR**
500 East Third Street
Carson City, NV 89713

**State of Nevada, Dept. Employment, Training and Rehabilitation
Kristine K. Nelson, Administrator of ESD**
500 East Third Street
Carson City, NV 89713

(Representatives - administrators and defendant's attorney)

_____
Signature

on ___August 18, 2023___
     (Date)